UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| KYLE RIMER, SAMANTHA RIMER, MARVIN CARPENTER, KATHRYN CARPENTER, | ) ) ) ) ) | 2:16-CV-00155-TRM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AARON'S, INC., D/B/A AARON'S | ) ) | |
| Defendant | | |

## REPORT AND RECOMMENDATION

Plaintiffs (the "Carpenters" and the "Rimers") have filed a "Motion to Modify the Scheduling Order and For Leave to File an Amended Complaint" [Doc. 18]. Defendant ("Aaron's") has responded, objecting to the amendment [Doc. 20]. On April 27, 2017, Plaintiffs filed their Reply [Doc. 21]. The matter is now ripe for resolution. The matter is before the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and the standing orders of the District Court.

**I.   Background**

The Carpenters owned a home in Bulls Gap, Tennessee which they rented to the Rimers. The Rimers, needing a clothes dryer, leased one from Defendant, who delivered it to the home on July 7, 2015. Both the Carpenters and the Rimers claimed that Defendant's employees "installed the dryer at the Rimer's residence and performed the necessary wiring, venting connections, power cord connections, and placement of the dryer in the home for service." [Doc. 1, *Complaint,* ¶ 10, pg. 2]. Defendant admitted that it installed the dryer but denied the remaining allegations

1

contained in that paragraph [Doc. 8, *Answer,* ¶ 10, pg. 2]. On October 19, 2015, a fire broke out at the back portion of the dryer, destroying the entire home and much of Rimer's personal property [Doc. 1, *Complaint,* ¶ 23, pg. 5]. Plaintiffs claim Defendant's negligent and reckless installation of the dryer caused the fire and its destruction of the property.[1] On June 7, 2016, the Carpenters and Rimers filed this lawsuit against Defendant in this court [Doc. 1].

After Defendant was served on June 8, 2016, it filed an Answer on July 22, 2016 [Doc. 8]. On September 13, 2016, Plaintiffs sent interrogatories and requests for production of documents to Defendant's counsel [Doc. 19-1, pg. 2]. On September 20, 2016, the parties filed their Rule 26(f) Report [Doc. 12]. Counsel agreed, in an effort to work together, that Defendant had 60 days to respond to any discovery requests, which meant that, in this case, its responses to Plaintiffs' discovery requests were due by November 12, 2016. On September 30, 2016, the District Court entered a Scheduling Order which set the deadline to amend the pleadings as March 13, 2017. [Doc. 14].

Defendant did not respond to the discovery requests within the agreed upon timeframe. On November 17, 2016, Plaintiffs' counsel sent an email to Defendant's counsel inquiring about the status of the responses. In response, Defendant's counsel advised that he would provide those responses "within the next week or so, as the Defendant had experienced employee turnover causing a delay." [Doc. 19-1, pg. 10]. That week came and went with no responses served. Plaintiffs' counsel continued to contact Defendant's counsel about the lack of responses. After numerous contacts with Defendant's counsel about responding to the discovery requests, [Doc. 19-1, pg. 7-17], finally on January 10, 2017, Defendant responded to the discovery requests.

---

[1] Specifically, Plaintiffs allege that Defendant's employees negligently and recklessly installed the dryer by using a "non-approved flexible vent duct" which overheated and caused the "electrical pigtail to short." [Doc. 1, *Complaint,* ¶ 15, pg. 3].

One of the interrogatories asked Defendant to "state fully all that was done … by your employees[] in respect to the delivery and/or installation of the subject dryer." [Doc. 20-1, pg 2]. In response, Defendant stated the following:

> Aaron's technicians are responsible for delivering the appliance and installing it in the area designated by the lessee. When the appliance is a dryer, the Aaron's technicians install the power cord onto the dryer, plug it in, and then test the dryer to make sure it is heating and that there are no issues with the dryer. In this instance, the Morristown store technicians neither installed or supplied the dryer exhaust hose nor were they authorized to do so.

[Doc. 20-1, *Defendant's Responses to Interrogatories,* pg. 2]. Two days later, Plaintiffs' counsel requested dates to take the depositions of several of Defendant's employees [Doc. 19-1, pg. 4]. Defendant's counsel was not available for depositions until March 13th and March 20th, after the date set by the Scheduling Order to amend the pleadings. Plaintiffs were deposed on March 23, 2017, and Defendant's technicians who installed the dryer on March 24, 2017.

At their depositions, Defendant's technicians testified that they delivered and installed the dryer, but did not connect the vent duct because Defendant had a "policy" that prohibited them from completely installing the dryers such that they would be ready to use. Plaintiffs claim that the disclosure of this "policy" of not completely installing dryers is new information and runs contrary to Defendant's representations in its marketing of its products and installation services. Defendant represents in its advertisements that "When you lease with Aaron's, delivery and set-up are free. Experienced product techs will arrive and assemble, connect, test, demonstrate, place your product where you want, and of course, clean up before they leave." [Doc. 19-1, pg. 5, Ex. 10]. The transcripts were completed on April 3, 2017.

On April 12, 2017, Plaintiffs filed this motion to add two new claims for a violation of the Tennessee Consumer Protection Act ("TCPA") based on (1) the apparent contradiction between the deposition testimony of Defendant's technicians and the advertisements made by Defendant,

3

and (2) that the deliver and set-up would be performed by qualified and trained professionals. [Doc. 21, pg. 2; Doc. 18-1, *Proposed Amended Complaint,* pg. 8-9]. Plaintiffs claim that they discovered for the first time at the deposition of Defendant's technicians on March 24, 2017, that Defendant did not provide, connect, or install the unauthorized vent duct "because such an act would run counter to its policy and practice of neither providing nor allowing their product technicians to connect dryer vent ducts." [Doc. 19, pg. 3]. Because the District Court established March 13, 2017 as the deadline to amend the pleadings [Doc. 14], Plaintiffs' motion requests the Court to extend that deadline to permit the filing of the Amended Complaint.

## II.     Analysis

In deciding whether to permit Plaintiffs to amend their complaint to add a new cause of action, the Court first considers whether the amendment would be proper under Fed.R.Civ.Pro. 15. In that regard, the Court must address whether the amendment relates back to the filing of the initial complaint. In this case, even if the amendment relates back, the Court has to address whether the Scheduling Order should be amended as the time in which to amend the pleadings has passed. The Court will address each issue in turn.

### A.     Relation Back of the Amended Complaint

On the first issue, Fed.R.Civ.Pro 15(c)(1)(B) provides that an amendment relates back to the date of the original pleading when it "asserts a claim … that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading...." Fed.R.Civ.Pro. 15(c)(1)(B). "'[A] court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence.'" *Hall v. Spencer County, Kentucky*, 583 F.3d 930, 934 (6th Cir. 2009) (quoting *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000)).

Rule 15 does not define "same transaction or occurrence," thus, when considering whether an amendment arises out of the same transaction or occurrence, the court must determine "'whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading.'" *Id.* (quoting *Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 516 (6th Cir. 2007)). If so, the court will allow the amended pleading to relate back to the original pleading. *Id.* The Court may also consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of amendments." *Moross Ltd. Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 518–19 (6th Cir. 2006). It is important to note that "a claim with entirely different 'operative facts' will not relate back." *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 375 (6th Cir. 2015)(quoting *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 249 (6th Cir. 2000)).

Defendant argues that both of Plaintiff's TCPA claims are time-barred because they do not relate back to the initial compliant filed in this case. The initial Complaint alleged negligent installation and did not even mention anything about advertising. Moreover, the initial complaint is about Defendant actually installing the dryer vent duct whereas the amended complaint is premised on Defendant not installing the dryer vent duct. The factual allegations, claims Defendants, are "strikingly different." [Doc. 20, pg. 5]. Defendant also notes that the initial complaint and the amended complaint contain mutually exclusive factual allegations which preclude the amended complaint from relating back to the initial complaint.

The amended complaint alleges different facts and a different cause of action than contained in the initial Complaint. The focus of Rule 15 is on the "conduct, transaction or occurrence" and whether the defendant would be on notice based on the allegations contained in

the initial Complaint that it could be called to answer the allegations in the amended Complaint. *Hall,* 583 F.3d at *934.* In this case, Plaintiff alleged in the initial Complaint that Defendant installed the dryer completely, including performing the necessary wiring, venting connections, power cord connections, and placement of the dryer in the home. [Doc. 1, Complaint, pg. 2]. The initial Complaint does not mention anything about advertising or marketing or even hint at any "representations" made by Defendants regarding the installation of the dryer. The initial Complaint, which is well drafted, is all about negligent installation – what Defendant did with respect to this particular dryer – inadequate training of its technicians, and failure to warn. The initial Complaint does not allege a TCPA violation, attempt to allege a TCPA violation or even allude to a potential TCPA issue with respect to the marketing and advertising of Defendant's installation services.

An amendment can relate back if the new claims constitute "added events leading up to the same injury" or "an added theory of liability for the same occurrence." *Miller v. Am. Heavy Lift Shipping*, 231 F3d 242, 248-49 (6th Cir. 2000). The injury in this case is the destruction of the home and personal property caused by a fire. The home was not destroyed because of a misrepresentation or deceptive marketing. It was destroyed because the dryer was not installed correctly. The TCPA allows for recovery by "[a]ny person who suffers an ascertainable loss of money … or thing of value wherever situated, as a result of the use or employment by another of an unfair or deceptive act or practice described in T.C.A. § 47-18-104(b) and declared to be unlawful by this part." T.C.A. § 47-18-109(a)(1). "[A] deceptive act or practice is a material representation, practice or omission likely to mislead a reasonable consumer." *Davis v. McGuigan*, 325 S.W.3d 149, 161-62 (Tenn. 2010). An act is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves…." *Id.* As to

the first TCPA violation, none of these allegations is fairly raised in the initial Complaint. The initial Complaint is silent.

That this first TCPA claim is not fairly raised in the initial Complaint is borne out by Plaintiffs own argument. Plaintiff acknowledges that the new claim is an alternative theory of recovery in case the jury does not believe Plaintiff's testimony that Defendant's technicians completely installed the dryer. If the jury finds that Defendant did, in fact, completely install the dryer, as Plaintiff contends, including connecting the vent ducts, then Defendant would not be guilty of engaging in any deceptive practices under the TCPA as it would have done exactly what it said it would do, that is, install the dryer. At that point, it could be guilty of negligence, but not a TCPA violation. But in order to even get to Plaintiff's first TCPA claim as it relates to the installation of the dryer, the jury would have to disbelieve Plaintiffs and their testimony. Thus, it strikes the Court as odd that Plaintiffs seek to add a new claim the success of which is based on the jury not believing their story about what happened. For that reason, Plaintiffs very wisely did not plead its first TCPA claim in their initial complaint regarding the installation of the dryer.

The initial Complaint does not put Defendant on notice as to the first TCPA claim. Plaintiffs cite *Gary Prince Revocable Trust v. Blackwell*, 735 F.Supp.2d 804 (M.D. Tenn. 2010) as support that TCPA claims relate back to the initial Complaint. In *Blackwell,* the amended complaint related back to the date of the initial filing because "the original Complaint filed in this case alleged unfair and deceptive trade practices in violation of the TCPA generally, and the Amended Complaint merely further honed the claim…." *Id.* at 819. In this case, Plaintiffs did not allege any unfair or deceptive trade practices at all. Plaintiffs also rely on *Cowie v. State Farm Fire & Cas. Co*., No. 107-CV-63, 2007 WL 2238272, at *8 (E.D. Tenn. Aug. 1, 2007). In *Cowie,* the plaintiffs brought a breach of contract suit against State Farm for failing to pay under the terms

7

of the policy for the loss of plaintiff's boat. The plaintiffs filed the amended complaint, adding a TCPA violation for the denial of the insurance claim. The district court found the amendment related back because "the plaintiffs' alleged violation of the TCPA arose out of the same transaction as the breach of contract action alleged in the original complaint-i.e., the denial of plaintiffs' insurance claim." *Id.* at *8. But that is not the case here. Plaintiff's first TCPA claim does not arise out of the same transaction, but involves wholly different factual allegations. Thus, it does not relate back to the initial Complaint.[2]

The other aspect of the proposed amended Complaint relates to the second of Plaintiffs' TCPA claim, and that is, training of Defendant's technicians.[3] In their initial Complaint, Plaintiffs allege that Defendant failed to adequately train its technicians. [Doc. 1, *Complaint,* ¶ 20(d), pg. 4]. The proposed amended complaint seeks to add a claim that Defendants engaged in deceptive acts by claiming that they had "experienced product techs …[to] assemble … your product…." [Doc. 19-1, pg. 5]. This allegation does not require Plaintiffs testimony to be disbelieved in order to succeed. In fact, it is not a significant leap from allegations of inadequate training from the initial Complaint to allegations that Defendant *advertised* it had trained technicians installing the products in the amended Complaint. Defendant had to be on notice that what it said about its technicians could be raised in an amended pleading. To be sure, its defense is the same under the initial Complaint and the amended Complaint, that is, its technicians were qualified and did exactly what they were authorized to do. Thus, this aspect of Plaintiffs' proposed amended Complaint would relate back to the initial Complaint as Defendant was on notice that it could be called to answer for its representations about the qualifications of its technicians.

---

[2] This claim is outlined in the Proposed Complaint at ¶¶ 36-37, and 39(b). [Doc. 18-1, pg. 8-9].
[3] This claim is outlined in the Proposed Complaint at ¶¶ 34-35, 39(a) and (c). *Id.*

### B. Amending the Scheduling Order

The next issue is whether the Scheduling Order should be amended to permit this new legal theory. The Court recommends that the Scheduling Order be amended. Plaintiffs' counsel has been nothing but diligent in moving this case along. The only reason this issue was not revealed earlier was because the depositions could not be scheduled any sooner given the schedule of Defendant's counsel. Plaintiffs should not be prejudiced because of that. Moreover, Defendants are not prejudiced because no additional discovery is required from Plaintiffs regarding the training of Defendant's own technicians. Plaintiffs even concede that no additional discovery is necessary on this claim. Thus, there should not be a need to amend the discovery deadline past the June 5th date.

### III. Conclusion

A decision to modify the scheduling order is left to the sound discretion of the District Court. The undersigned RECOMMENDS that Plaintiff's Motion [Doc. 18] be GRANTED IN PART AND DENIED IN PART, and that they be permitted to file their Amended Complaint consistent with this Report and Recommendation. The undersigned also RECOMMENDS that the parties be ordered to address immediately any additional discovery that would need to occur as a result of the amendment and address to the Court any concerns given the current discovery deadline of June 5, 2017.[4]

                                                   Respectfully Submitted,

                                                   s/Clifton L. Corker
                                                   United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).